641 S.E.2d 425

**RESPONSIBLE ECONOMIC DEVELOPMENT, Angela Ketchum, Carolyn Jebaily, Peggy Brown, Rachell Hyman, Bobby Griffin, Walter Sallenger, its Members and Directors, Appellants,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and Wal–Mart Stores East, LP, Respondents.**

No. 26248.

Supreme Court of South Carolina.

Heard Dec. 5, 2006.
Decided Jan. 22, 2007.
Rehearing Denied March 7, 2007.

548

Robert Guild, of Columbia, for Appellants.

Etta R. Williams, of Columbia, for Respondent South Carolina Department of Health and Environmental Control.

James D. Myrick, of Buist, Moore, Smythe & McGee, PA, of Charleston, for Respondent Wal–Mart Stores East, LP.

Justice BURNETT:

This appeal concerns the issuance of a stormwater management and sediment control permit (stormwater permit) to Respondent Wal–Mart Stores East, LP (Wal–Mart). We certified this case for review from the Court of Appeals

pursuant to Rule 204(b), SCACR, and affirm as modified the circuit court's decision to uphold the issuance of the stormwater permit.

## FACTUAL/PROCEDURAL BACKGROUND

In 2003, Wal–Mart applied for a stormwater permit in connection with a proposed development in Florence, South Carolina. Wal–Mart's proposed development includes the construction of a Wal–Mart Supercenter, an accompanying parking lot, and a central stormwater detention pond. The stormwater would flow across the paved and landscaped areas to inlets, which would lead to the detention pond. The detention pond would accommodate 2, 10, 25, 50, and 100–year frequency storm events. From the detention pond, the stormwater would flow into an unnamed tributary and continue in the unnamed tributary for approximately one-half mile at which point the unnamed tributary converges with Jeffries Creek.

Respondent South Carolina Department of Health and Environment Control (DHEC) granted the stormwater permit. Responsible Economic Development, Angela Ketchum, Carolyn Jebaily, Peggy Brown, Rachell Hyman, Bobby Griffin, and Walter Sallenger, its Members and Directors, (Appellants) objected to the issuance of the stormwater permit and brought this contested case before an Administrative Law Judge (ALJ). At the hearing, Appellants argued 26 S.C.Code Ann. Reg. 72–305(B)(4) (Supp.2005) required denial of the stormwater permit because Wal–Mart's proposed development violated the antidegradation rules set forth in 25 S.C.Code Ann. Regs. 61–68 and –69 (Supp.2005). The ALJ issued a Final Order and Decision upholding DHEC's grant of a stormwater permit.

Appellants appealed to the Board of Health and Environment Control (Board), which affirmed the ALJ's decision. On further appeal, the circuit court upheld the Board's decision. This appeal followed.

## ISSUE

Did the circuit court err in affirming the Board's decision to uphold the grant of a stormwater permit to Wal–Mart?

## STANDARD OF REVIEW

This case involves appearances before four tribunals. The ALJ presided as the finder of fact at the contested hearing. S.C.Code Ann. § 1–23–600(B) (2005). The Board sat in an appellate capacity, and its review was governed by S.C.Code Ann. § 1–23–610(D). The circuit court also sat in an appellate capacity, and its review was governed by S.C.Code Ann. § 1–23–380(A)(6).

This Court determines whether the circuit court properly applied its standard of review and applies the same standard of review established for the circuit court. *Brown v. S.C. Dep't of Health & Envtl. Control,* 348 S.C. 507, 512, 560 S.E.2d 410, 413 (2002). A reviewing court may reverse or modify the decision of any agency if substantial rights of the appellant have been prejudiced because the findings, conclusions, or decisions of the agency are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C.Code Ann. § 1–23–380(A)(5) (Act. No. 387, 2006 S.C. Acts 387, eff. July 1, 2006).

## LAW/ANALYSIS

■ Appellants contend the circuit court erroneously affirmed the issuance of a stormwater permit in this case. Appellants allege Regulation 72–305(B)(4) requires the denial of the stormwater permit because stormwater runoff from Wal–Mart's proposed development will further depress oxygen levels in the unnamed tributary and Jeffries Creek and thus violates the antidegradation rules set forth in Regulations 61–68(D)(1) and –69. Appellants also contend Regulation 72–305(B)(4) requires the denial of the stormwater permit because Wal–Mart has failed to employ adequate measures to handle pollutants discharged from the development as required by Regulation 61–68(D)(2) and DHEC's written policy

regarding antidegradation. *See* S.C. Dep't of Health & Envtl. Control, Bureau of Water, *Antidegradation for Activities Contributing Nonpoint Source Pollution to Impaired Waters* (Nov. 1999). We disagree.

The Stormwater Management and Sediment Reduction Act (Stormwater Act) [1] requires a person who intends to engage in a land disturbing activity [2] to submit a stormwater management and sediment control plan to the appropriate agency and obtain a permit before engaging in the activity, unless an exemption applies. S.C.Code Ann. § 48–14–30 (Supp.2005). The Stormwater Act further requires DHEC to promulgate regulations for the "types of activities that require a stormwater ... permit" and for "permit application and approval requirements." *Id.* § 48–14–50(C)(3) & (9). DHEC fulfilled that duty by promulgating, in relevant part, Regulations 72–305 and –307. Regulation 72–305 outlines the permit application and approval procedure, and Regulation 72–307 sets forth the minimum standards and specifications and the specific design criteria for projects requiring a stormwater management and sediment control plan.

Regulation 72–305(B)(3) requires Regulations 72–305 and –307 to apply to land disturbing activities disturbing more than five acres. DHEC can modify the regulatory requirements of Regulations 72–305 and –307 "on a case-by-case basis to address specific stormwater quantity or quality problems or to meet S.C. Coastal Council or other regulatory requirements." [3] 26 S.C.Code Ann. Reg. 72–305(B)(4).

The ALJ determined the requirements of Regulations 72–305 and –307 applied to this case because Wal–Mart's pro-

---

1. S.C.Code Ann. §§ 48–14–10 to –170 (Supp.2005).

2. " 'Land disturbing activity' means any use of the land by any person that results in a change in the natural cover or topography that may cause erosion and contribute to sediment and alter the quality and quantity of the stormwater runoff." S.C.Code Ann. § 48–14–20(8).

3. *See generally* S.C.Code Ann. § 48–14–20(11) (defining "[s]tormwater management" to mean for: "(a) quantitative control, a system of vegetative or structural measures, or both, that control the increased volume and rate of stormwater runoff caused by manmade changes to the land; (b) qualitative control, a system of vegetative, structural, or other measures that reduce or eliminate pollutants that might otherwise be carried by stormwater runoff").

posed development involves a land disturbing activity covering approximately 43 acres. He found the stormwater runoff from Wal–Mart's development would not flow directly into Jeffries Creek, an impaired water body, but would flow directly into an unnamed tributary, which is an unimpaired water body. Then the stormwater would flow for one-half mile before converging with Jeffries Creek, and he determined the stormwater runoff would obtain re-aeration properties before converging with Jeffries Creek. The ALJ found stormwater runoff from three other commercial developments flowed into the unnamed tributary before converging with Jeffries Creek without negatively affecting the water quality of Jeffries Creek. He also found there was no significant evidence that quantified the inadequate measures alleged by Appellants. Based on the totality of the circumstances, the ALJ determined Regulation 72–305(B)(4) was not applicable to Wal–Mart's application for a stormwater permit and upheld the issuance of the stormwater permit to Wal–Mart.

The Board affirmed the ALJ's decision. The circuit court found the Board's view of the antidegradation rules conformed to the framework set forth in Regulations 61–68 and –69 and found there was substantial evidence to support the ALJ's and the Board's findings.

Appellants allege Wal–Mart's proposed development violates regulations promulgated pursuant to the Pollution Control Act.[4] The purpose of the Pollution Control Act is "to maintain reasonable standards of purity of the air and water resources of the State. . . ." S.C.Code Ann. § 48–1–20 (1987). DHEC has the "authority to abate, control and prevent pollution" in order to enforce the provisions of the Pollution Control Act. *Id.* DHEC is also authorized to issue permits pursuant to the Pollution Control Act for discharge of wastes or air contaminants and for construction or alteration of disposal systems. *Id.* §§ 48–1–100 & –110 (Supp. 2005).

■ Although stormwater runoff is a source of pollution,[5] the legislature enacted the Stormwater Act to specifically deal

---

4. S.C.Code Ann. §§ 48–1–10 to –350 (1987 & Supp. 2005).

5. *See generally* 26 S.C.Code Ann. Reg. 72–300(A) (Supp.2005) ("Stormwater runoff is a source of pollution of waters of the State.").

with stormwater management and sediment reduction. The purpose of the Stormwater Act is "to reduce the adverse effects of stormwater runoff and sediment and to safeguard property and the public welfare by strengthening and making uniform the existing stormwater management and sediment control program." Act No. 51, 1991 Acts 167. The Stormwater Act requires DHEC to issue permits for persons engaging in a land disturbing activity, unless an exemption applies. S.C.Code Ann. § 48–14–30(A).

As a creature of statutes, regulatory bodies like DHEC have only the authority granted them by the legislature. *Med. Soc'y of S.C. v. Med. Univ. of S.C.*, 334 S.C. 270, 275, 513 S.E.2d 352, 355 (1999); *City of Columbia v. Bd. of Health & Envtl. Control*, 292 S.C. 199, 202, 355 S.E.2d 536, 538 (1987). Any action taken by DHEC outside of its statutory and regulatory authority is null and void. *Triska v. Dep't of Health & Envtl. Control*, 292 S.C. 190, 194, 355 S.E.2d 531, 533 (1987).

Relevant to this appeal, the regulations of the Pollution Control Act—Regulations 61–68 and –69 [6]—and the regulations of the Stormwater Act—Regulations 72–305 and –307 [7] —do not reference each other and are authorized by different enabling acts. In the absence of statutory authorization to apply the two acts and their corresponding regulations to each other, the regulations of the Pollution Control Act do not apply to the Stormwater Act or its regulations. Accordingly, we conclude, as a matter of law, the case-by-case modification of regulatory requirements under the Stormwater Act cannot be invoked because of an alleged violation of the Pollution Control Act's regulations. Furthermore, a stormwater permit issued pursuant to the Stormwater Act cannot be denied based on the regulations of the Pollution Control Act. Therefore, Regulation 72–305(B)(4) does not require the denial of a stormwater permit on the ground that the antidegradation rules have been violated because the regulations of the Pollution Control Act do not apply to the Stormwater Act.

---

6. *See* S.C.Code Ann. §§ 48–1–10 to –350.

7. *See* S.C.Code Ann. §§ 48–14–10 to –170.

## CONCLUSION

Based on the foregoing analysis, we affirm as modified the decision to grant a stormwater permit to Wal–Mart.

**AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.